FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**FEB 1 5 2006**

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 03-CV-97-B |
| | ) Criminal No. 03-CR-72-B |
| JOSHUA LEE PIER, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING PETITIONER'S MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. § 2255 AND DENYING PETITIONER'S MOTION FOR REDUCTION OF SENTENCE

This matter is before the Court upon Petitioner's Motion to Vacate, Set Aside, Review and Correct Sentence Previously Entered Pursuant to 28 U.S.C. § 2255 and on his Motion for Reduction of Sentence. After considering the Petitioner's motions, having reviewed the materials on file, and being fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

### BACKGROUND

On March 19, 2003, the Petitioner, Mr. Pier, was charged with multiple violations of the federal criminal laws concerning the possession of firearms. He initially pleaded not guilty to these charges. However, on January 12, 2004, Mr. Pier appeared in court and entered a guilty plea pursuant to a plea agreement with the

United States. Under the agreement, he pled guilty to count three of the indictment, charging him with unlawfully possessing a firearm after having previously been convicted of a felony, in exchange for the government's dismissal of the remaining counts. In addition, the government agreed to recommend that Mr. Pier receive a two level downward adjustment to his sentencing guideline calculation to reflect his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

At the change of plea hearing, the government's attorney outlined the terms of the plea agreement, the constitutional rights Mr. Pier would be waiving, what the parties had preliminarily determined to be the probable sentencing guideline range, and the fact that, notwithstanding the guideline range determined by the parties, the Court was bound only by the sentencing guidelines, not the plea agreement.

The Court then personally addressed Mr. Pier and asked him if the government's summary was accurate. Mr. Pier answered in the affirmative. He also affirmed that he had signed the agreement, had consulted with his lawyer about it, and had understood it. The Court advised Mr. Pier of the possible consequences of his plea, including the pertinent penalties and potential sentencing

2

guideline ranges that might apply.  After Mr. Pier indicated that he understood those matters, the Court explained the constitutional rights Mr. Pier would be waiving by pleading guilty.

The Court went on to explain the specific count to which Mr. Pier proposed to plead guilty.  Mr. Pier affirmed that he understood the charge, that he pled guilty to the charge, that his plea was voluntary, and that nothing was left out of the plea agreement.  He then described his actions of being previously convicted of a felony (delivery of a controlled substance for which he was sentenced to four to seven years with five years of probation) and possessing a firearm in late October of 2002 in Laramie, Wyoming. He also affirmed that he knew that he was prohibited from possessing a firearm.  Upon the Court's inquiry, Mr. Pier indicated that he was satisfied with the services of his attorney and that he had a full and adequate opportunity to discuss all details with him.

The Court found that Mr. Pier's guilty plea was voluntary, that there was a factual basis for the plea and entered the guilty plea and approved the plea agreement.

A presentence investigation was then performed and a report was prepared in connection with Mr. Pier's sentencing.  That report

3

proposed a base offense level of 20, pursuant to U.S.S.G. §
2K2.1(a)(4)(A), on account of Mr. Pier's prior felony conviction.
The report also proposed that the base level be increased by four
levels because during the time Mr. Pier was in possession of the
firearm, he had engaged in arguments with his wife, during which he
brandished the firearm and threatened to kill her. U.S.S.G. §
2K2.1(b)(5). Finally, the report proposed a three level reduction
under § 3E1.1 to reflect Mr. Pier's acceptance of responsibility,
for a total offense level of 21. Due to Mr. Pier's criminal
history score of 9, the final proposed sentencing range was 57-71
months, recommended to run consecutively with Mr. Pier's
undischarged term of imprisonment on several probation violations
involving unrelated charges.

In response to the presentence report Mr. Pier asserted one
objection concerning the four level proposed enhancement under §
2K2.1(b)(5): he denied threatening his wife with the firearm. He
argued that while he was charged with aggravated assault in
connection with the incident, the charge was ultimately dismissed.
Mr. Pier further requested a hearing in connection with that
proposed enhancement.

At the outset of the sentencing hearing, an evidentiary

4

hearing on Mr. Pier's only objection concerning the four level proposed enhancement under § 2K2.1(b)(5) was held. The government called two law enforcement officers who had contact with Mrs. Pier immediately after the incidents which gave rise to the proposed enhancement.[1]

Laramie police officer Tory King testified that on October 26, 2002, he responded to a domestic dispute call at the Piers's home. Upon his arrival, he was met by Mrs. Pier, who advised him that she and Mr. Pier had been in a physical altercation just minutes prior to his arrival. She further advised officer King that Mr. Pier had assaulted her, beaten her, stabbed her in the neck twice with a hypodermic needle and threatened to kill her while brandishing a 9 mm handgun. Officer King was able to partially corroborate Mrs. Pier's statement through his observation of two small puncture wounds on the right side of her neck which he believed to be consistent with her story, as were the bumps on her head, which King also observed.

Special Agent Michael Brisendine of the Laramie Police Department testified that he also had interviewed Mrs. Pier. He

---

[1]

The government had intended to call Mrs. Pier to testify as well, but at the last moment, she declined to testify, asserting the Fifth Amendment privilege.

5

noted that Mrs. Pier was very straightforward about the fact that
she was then under the influence of cocaine, but that she
nonetheless appeared to him to be aware of what was going on around
her and was very coherent in their conversation.    Brisendine
testified that his interview with Mrs. Pier lasted approximately
four hours and, during that time, she told him that on the evening
of October 24, 2002, she had been sleeping when Mr. Pier awakened
her.  At that time, she said Mr. Pier was holding a gun to her head
and said, "I'll fucking kill you, bitch."   Mrs. Pier also told
Special Agent Brisendine that the gun was one that Mr. Pier had
obtained earlier that day when a friend purchased it for him with
money Mr. Pier had provided to him.  She also indicated that Mr.
Pier had twice injected her in the neck with a hypodermic needle.
Brisendine testified that he examined her neck and was, like King,
able to make out two small wounds that were consistent with
puncture wounds from a hypodermic needle.

    At the conclusion of the government's evidence, Mr. Pier's
counsel advised the Court that he would not call any witnesses to
testify.  Accordingly, the evidence at the sentencing hearing was
closed.    Having heard the testimony that was offered,  and
considering Mr. Pier's statement at his change of plea hearing that

6

he did possess a firearm during the period he allegedly assaulted Mrs. Pier with it, the Court concluded that the government had carried its burden under § 2K2(b)(5) to show by a preponderance of the evidence that Mr. Pier had possessed a firearm in connection with another felony, namely, aggravated assault. Based on that determination, the Court found that Mr. Pier's base offense level of 20 should be increased to 24. The Court then found that it should be reduced by three levels for his acceptance of responsibility, for a total offense level of 21. Because of his criminal history, his sentencing range was 57 - 71 months.

Mr. Pier's lawyer noted that Mr. Pier was already serving a 4 to 7 year term in the Wyoming State Penitentiary and requested that the Court make at least part of his federal sentence concurrent with the undischarged portion of his state sentence. The government opposed that request. The Court then ruled that a 71 month sentence which would run consecutively to his state sentence was appropriate in order to protect society for as long as possible from future offenses by Mr. Pier. The Court also sentenced Mr. Pier to a three (3) year term of supervised release, along with a $400.00 fine.

The Court advised Mr. Pier that there was no waiver of his

right to appeal his sentence and thus he could appeal it if he
wished.  Mr. Pier did not appeal his sentence.  However he did file
the pending § 2255 motion in a timely fashion, as well as the
pending Motion for Reduction of Sentence.

## ANALYSIS

The Court will first address Mr. Pier's § 2255 motion and then
will turn its attention to the Motion for Reduction of Sentence.

## I.   Defendant's Motion to Vacate, Set Aside, Review and Correct Sentence Previously Entered Pursuant to 28 U.S.C. § 2255

In his § 2255 motion, Mr. Pier identified the following issues
for review: (1) whether sufficient evidence existed to convict Mr.
Pier for being a felon in possession of a firearm; (2) whether
trial counsel was ineffective for recommending that he enter a
guilty plea when the government did not have sufficient evidence to
convict him; (3) whether the government unconstitutionally failed
to disclose evidence in Mr. Pier's favor; (4) whether it was
"harmful error" for the court and counsel not to advise Mr. Pier
that his sentence could be enhanced; (5) whether Mr. Pier
understood the breadth of the charges against him before pleading
guilty; (6) whether Mr. Pier's conviction was obtained through a
coerced confession; (7) whether Defendant's counsel was ineffective
in advising him not to appeal his sentence; (8) whether the Court's

8

decision was "unreasonable" in light of <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) and <u>United States v. Booker</u>, 125 S. Ct. 738 (2005); (9) whether the sentence was unlawful because the Court ordered it to run consecutively and not concurrently with his state prison sentence; (10) whether his counsel was ineffective by failing to request an evidentiary hearing at sentencing; (11) whether his counsel was ineffective by failing to object to the government's proof of sentencing factors by proffer, rather than live testimony or affidavits; (12) whether his counsel was ineffective for failing to request an evidentiary hearing to challenge the credibility of the government's evidence (13) whether Mr. Pier was denied the right to call witnesses to testify on his behalf at sentencing; (14) whether there was sufficient factual basis for his guilty plea, as required by Rule 11(f) of the Federal Rules of Criminal Procedure; (15) whether Mr. Pier's attorney was ineffective because he was operating under a conflict of interest; (16) whether Mr. Pier's due process rights were violated when the courts failed to appoint him counsel on appeal; (17) whether the enhancement of his sentence under § 2K2.1(b)(5) was improper because it was based on charges that were ultimately dismissed; and (18) whether the Court failed to advise him that his sentence was

9

appealable.[2]

Before the Court addresses these claims, it is important to set forth the applicable analytical framework.

## A. Analytical Framework under 28 U.S.C. § 2255

Section 2255 provides, in pertinent part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. This provision is not available to test the legality of matters which should have been raised on direct appeal. United States v. Walling, 982 F2d 447, 448 (10th Cir. 1992). "A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the

_____
[2]

Mr. Pier specifically identified the first nine issues in his pleadings. The remaining issues were raised implicitly in his arguments. All issues will be addressed by the Court, in compliance with the longstanding rule of liberal construction of pro se complaints. Haines v. Kerner, 404 U.S. 519, 520 (1972) (allegations of pro se complaint held to "less stringent standards than formal pleadings drafted by lawyers").

10

alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994); United States v. Frady, 456 U.S. 152, 167 (1982). This procedural bar applies to a collateral attack on a defendant's sentence as well as a conviction. Id. And, if the government raises this procedural bar, the courts must enforce it and conclude Mr. Pier's claims procedurally barred unless cause and prejudice or a miscarriage of justice is shown. Allen, 16 F.3d at 378.

An assertion that counsel was ineffective, if found to have merit, may be sufficient to establish cause for the procedural default. United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993). Cause may also be satisfied by some other objective factor external to the defense that impeded counsel's efforts to comply with the procedural rules, such as the novelty of a constitutional claim. Strickler v. Greene, 527 U.S. 263 (1999); Engle v. Isaac, 456 U.S. 107 (1982). Prejudice is established when Mr. Pier shows that "there is a reasonable probability that the result of the trial [or sentencing] would have been different" if the alleged errors had not occurred. Strickler, 527 U.S. at 289 (1999).

**B. Ineffective Assistance Claims**

11

Six of the issues raised by Mr. Pier are based upon claims that his counsel was ineffective for various reasons. Those issues are: (1) whether trial counsel was ineffective for recommending that he enter a guilty plea when the government did not have sufficient evidence to convict him; (2) whether counsel was ineffective in advising him not to appeal his sentence; (3) whether counsel was ineffective by failing to request an evidentiary hearing at sentencing; (4) whether counsel was ineffective by failing to object to the government's proof of sentencing factors by proffer, rather than live testimony or affidavits; (5) whether counsel was ineffective for failing to request an evidentiary hearing to challenge the credibility of the government's evidence; and (6) whether Mr. Pier's counsel was ineffective because he was operating under a conflict of interest. The Court will address these issues first to determine whether the alleged ineffective assistance of counsel establishes the cause requirement under § 2255.

The Sixth Amendment provides a criminal defendant with the right to effective assistance of counsel. Kimmelman v. Morrison, 477 U.S. 365, 377 (1986). In a § 2255 motion, the petitioner has the burden of overcoming the strong presumption that counsel

12

provided effective assistance. United States v. Lipp, 54 F. Supp. 2d 1025, 1030 (D. Kan. 1999). To demonstrate ineffective assistance of counsel, a petitioner must demonstrate that: (1) his trial attorney's performance was deficient and (2) he was prejudiced by his trial attorney's deficient performance. Williams v. Taylor, 529 U.S. 362, 390 (2000) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Under the first element, a trial attorney's performance is deficient if his representation fell below an objective standard of reasonableness. Id. at 390-91. In applying this test, federal courts "give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting Strickland, 466 U.S. at 690).

To demonstrate actual prejudice under the second element, a habeas petitioner must show "that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694). A petitioner must do more than make

13

conclusory allegations or a theoretical argument - he must show that, but for the errors of his counsel, there is a reasonable probability that the results would have been different, i.e., that he would have been acquitted, or that he would not have pleaded guilty, or that he would have received a more favorable sentence. Strickland v. Washington, 466 U.S. at 694; Lasiter v. Thomas, 89 F.3d 699, 703 (10th Cir. 1996).

### 1. Allegation of ineffectiveness based on recommended guilty plea when there was insufficient evidence for a conviction.

Mr. Pier claims that his counsel "rendered ineffective assistance at [his] hearing, as the government did not have enough evidence to sustain the felony possession of firearm charge that [counsel] advised his client to plead guilty to."  (Def's § 2255 Motion at 5.) This claim cannot be sustained because Mr. Pier has offered no evidence that the attorney's advice was unreasonable. Further, Mr. Pier has offered no more than a conclusory statement that but for his counsel's advice, he would not have pled guilty and would not have been convicted.

The fact is that, according to Mr. Pier's statements at his change of plea hearing, there was plenty of evidence to convict him of a violation of 18 U.S.C. § 922(g)(1).  Mr. Pier testified that

14

he was previously convicted of a felony, thereafter possessed a firearm, and knew that he was prohibited from possessing firearms. (Change of Plea Tr. at 13-15.)  The Court had a sufficient factual basis for accepting Mr. Pier's guilty plea.  Mr. Pier has provided no information which would justify the Court's disregard of the admissions made at the change of plea hearing, nor has he provided any evidence indicating that but for his counsel's advice, he would not have pled guilty and would not have been convicted.  Therefore, Mr. Pier's claim that his attorney was ineffective in advising him to plead guilty must be rejected.

## 2. Allegation of ineffectiveness based upon advice not to appeal his sentence.

Mr. Pier claims that his attorney was constitutionally ineffective because he advised him not to appeal his sentence.  Mr. Pier has failed to demonstrate either prong necessary to establish ineffective assistance on this issue.  First, he has not provided any facts or arguments which would indicate that his attorney's advice was unreasonable.  As explained above, the Court must presume that the attorney's advice was reasonable and it is Mr. Pier's burden to overcome that presumption.  Second, he has not shown that, but for his attorney's advice, he would have prevailed on appeal.  For example, he does not show what issues would have

15

been appealable or how he would have succeeded on those issues. For these reasons, this claim of ineffective assistance is also rejected.

### 3. Allegation of ineffectiveness for failing to request an evidentiary hearing at sentencing.

Mr. Pier claims that his attorney was constitutionally ineffective because he failed to request an evidentiary hearing at sentencing. Mr. Pier does not state why a hearing was necessary or how it would have changed the outcome of his sentencing. There are potentially two issues on which a hearing might have been held: (1) to resolve the question of whether his guilty plea was supported by sufficient evidence; or (2) to determine whether sentencing guideline § 2K2.1(b)(5) applied.

The question of whether Mr. Pier's guilty plea was supported by sufficient evidence was resolved at the change of plea hearing. At that time, Mr. Pier rendered his guilty plea knowingly and voluntarily and the Court established that all of the elements of a violation of 18 U.S.C. § 922(g)(1) were present. Thus, no hearing on that issue was required.

With respect to the application of § 2K2.1(b)(5), there was a hearing at the sentencing. The Court heard evidence concerning the government's factual basis for the application of the enhancement

16

based upon Mr. Pier's aggravated assault on his wife.  Further, Mr.
Pier had the opportunity to present evidence on the issue at that
time, but did not do so.  Mr. Pier does not suggest what witnesses
or evidence he could have or would have produced at the hearing
that might have changed the outcome of the Court's application of
the sentencing guidelines or his ultimate sentence.  Therefore, he
has failed to establish ineffective assistance of counsel on this
issue.

### 4.  Allegation of ineffectiveness for failing to object to the proof of sentencing factors by proffer.

Mr. Pier claims that his attorney was constitutionally
ineffective because he failed to object to the government's proof
of sentencing factors by proffer, rather than live testimony or
affidavits.  (Def's § 2255 Motion at 5.)  The Court is unsure as to
Mr. Pier's reason for raising this issue.  It is clear from the
transcript of the sentencing that sentencing was not based upon a
"proffer," but rather based upon the testimony of two witnesses:
Officer Tory King and Special Agent Michael Brisendine, and upon
Mr. Pier's voluntary guilty plea.    (Sent. Tr. at 28-31.)
Therefore, this claim is denied.

### 5.  Allegation of ineffectiveness for failing to request an evidentiary hearing to challenge the government's evidence.

17

Mr. Pier next claims that his attorney was constitutionally ineffective because he failed to request an evidentiary hearing to challenge the credibility of the government's evidence. At the outset, the Court recognizes that there was a hearing at Mr. Pier's sentencing. Thus, the question raised by Mr. Pier must be whether his counsel was ineffective in his failure to challenge the credibility of the government's witnesses at that hearing.

It is true that Mr. Pier's counsel failed to cross-examine the government's law enforcement witnesses during their testimony at the sentencing hearing. Mr. Pier, however, has failed to establish either prong of the Strickland test for ineffective assistance of counsel. First, he makes no specific allegations as to the unreasonableness of his failure to cross-examine these witnesses. There may well have been no legitimate grounds upon which to challenge the credibility of these witnesses. Second, Mr. Pier has failed to allege any basis upon which the Court could conclude that, had Mr. Pier's counsel been more aggressive in his cross-examination of the witnesses that the outcome of his sentencing hearing would have been different. Therefore, this claim is denied.

**6. Allegation of ineffectiveness based upon counsel's**

18

**conflict of interest.**

Mr. Pier next claims that his attorney was constitutionally ineffective because he was operating under a conflict of interest. However, Mr. Pier never identifies the attorney's conflict. He does not even make any conclusory allegations about a conflict. He only states that "in the case at bar, there is a specter of conflict of interest on the part of the Plaintiff's counsel." Petitioner's Motion at 9. This, simply, is not enough to establish ineffective assistance of counsel under Strickland, 466 U.S. at 687. He has not presented the Court with any facts which would demonstrate that his attorney had a conflict, nor has he provided any facts to demonstrate that but for the alleged conflict, the result of his proceedings would have been any different. Id. It is well established that mere conclusory allegations are not sufficient. Lasiter, 89 F.3d at 703; Hatch v. State of Oklahoma, 58 F.3d 1447, 1457 (10th Cir. 1995). Therefore, he is not entitled to relief.

## C. The remaining claims

The Court now turns to the remaining claims which assert reasons other than the ineffective assistance of counsel as bases for overturning Mr. Pier's sentence pursuant of 28 U.S.C. § 2255.

19

Those claims are as follows: (1) whether sufficient evidence existed to convict Mr. Pier for being a felon in possession of a firearm; (2) whether the government unconstitutionally failed to disclose evidence in Mr. Pier's favor; (3) whether it was "harmful error" for the Court and counsel not to advise Mr. Pier that his sentence could be enhanced; (4) whether Mr. Pier understood the breadth of the charges against him before pleading guilty; (5) whether Mr. Pier's conviction was obtained through a coerced confession; (6) whether the Court's decision was "unreasonable" in light of Blakely v. Washington, 124 S. Ct. 2531 (2004), and United States v. Booker, 125 S. Ct. 738 (2005); (7) whether the sentence was unlawful because the Court ordered it to run consecutively and not concurrently with his state prison sentence; (8) whether Mr. Pier was denied the right to call witnesses to testify on his behalf at sentencing; (9) whether there was sufficient factual basis for his guilty plea, as required by Rule 11(f) of the Federal Rules of Criminal Procedure; (10) whether Mr. Pier's due process rights were violated when the courts failed to appoint him counsel on appeal; (11) whether the enhancement of his sentence under § 2K2.1(b)(5) was improper because it was based on charges that were ultimately dismissed; and (12) whether the Court failed to advise

20

him that his sentence was appealable.

### 1. Allegation that there was insufficient evidence to convict Mr. Pier for being a felon in possession of a firearm.

Mr. Pier claims that there was insufficient evidence to convict him for being a felon in possession of a firearm. As explained above, there was sufficient evidence to convict him of a violation of 18 U.S.C. § 922(g)(1). See supra Part I.B.1., pp. 14-15. Mr. Pier's own sworn admissions demonstrate that he was previously convicted of a felony, thereafter possessed a firearm, and knew that he was prohibited from possessing firearms. (Change of Plea Tr. at 13-15.) The Court had a sufficient factual basis for accepting Mr. Pier's guilty plea. Further, Mr. Pier has provided no information which would justify the Court's disregard of the admissions made at the change of plea hearing. In short, Mr. Pier has failed to show cause and prejudice and this claim is therefore denied.

### 2. Allegation that the government failed to disclose evidence in Mr. Pier's favor.

Mr. Pier next claims that the government unconstitutionally failed to disclose evidence in his favor, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Again, this claim fails on procedural grounds. Mr. Pier has not provided the Court with any

21

reason as to why this issue could not have been raised on direct appeal. Therefore, he has not established the requisite cause for a collateral attack under 28 U.S.C. § 2255. Further, he has not satisfied the Court that he was prejudiced by this alleged failure: he has failed to set forth any facts showing that the government did not disclose evidence, has not alleged what evidence was not disclosed, has not shown that the alleged undisclosed evidence was favorable to him, has not shown that it was material to elements of 18 U.S.C. § 922(g)(1), and has not shown that "there is a reasonable probability that the result of the trial [or sentencing] would have been different" if the government had disclosed this evidence.   Strickler, 527 U.S. at 289 (1999).   Therefore, this claim is denied.

### 3.   Allegation of "harmful error" because Mr. Pier was not advised that his sentence could be enhanced.

Mr. Pier next claims that it was "harmful error" for the Court and counsel not to advise him that his sentence could be enhanced beyond the 41-51 month range discussed by the parties at his change of plea hearing.[3]   Mr. Pier has not provided the Court with any

---

[3]

It is unclear whether Mr. Pier is claiming the ineffective assistance of counsel or not.   However, based upon the rationale provided in this section, he cannot establish the prejudice requirement under the Strickland test for ineffective assistance of

22

reason as to why this issue could not have been raised on direct appeal. Therefore, he has not established the requisite cause to successfully attack his sentence under 28 U.S.C. § 2255.

Moreover, even assuming that there was cause for not raising the issue on appeal, Mr. Pier has not demonstrated prejudice. A review of the change of plea hearing shows that the government did suggest that Mr. Pier's ultimate sentencing range could be as low as 41-51 months. However, nowhere in the record is this possible range represented to Mr. Pier as any sort of promise or certainty. In fact, the record reveals that Mr. Pier knew that the Court was not bound by the sentencing range or compromise reached by the parties. At the change of plea hearing the following exchange took place:

> GOVERNMENT'S ATTORNEY, MR. PICO: ... I will tell the Court that based upon our discussions with Mr. Olive, had Mr. Pier gone to trial and been convicted of either all five or any one of these counts, he would be looking in all likelihood at a maximum sentence of between 51

counsel because, regardless of his lawyer's performance, Mr. Pier was informed that the sentencing estimates were just that – estimates. Further, he does not claim that, had his attorney (or the Court for that matter) informed him that his sentence could be more than 51 months, he would have proceeded to trial instead of pleading guilty. Moreover, he does not make the argument that, had he gone to trial, he would have received a shorter sentence. Therefore, if he is asserting the ineffective assistance of counsel in his papers, that claim is denied.

and 63 months; that by pleading guilty he will be getting two levels off, not three, because we are at trial date and the United States will not be making the motion for the - that third level as is our custom simply because we have prepared for trial, Your Honor.

However, it is my further understanding that according to the calculations by Mr. Olive that the defendant will avail himself of the opportunity to receive a sentence of perhaps between 41 and 51 months, thereby reducing his exposure by almost two years. . .

. . .

Nonetheless, Your Honor, in spite of all that, Mr. Pier is aware of the fact that while you are bound by the sentencing guidelines, the fact of the matter is that you treat this plea agreement merely as a recommendation; that you can, within the limits of the law, depart either upward or downward, as the case may be. . . .

. . .

Naturally, as I indicated also, the discussions that we had with Mr. Olive are not set in stone. There is no - there are no guarantees until the probation office has had an opportunity to sit down and talk with Mr. Pier. I know that they have run his criminal record, and Mr. Olive's estimations are exactly that, and I think Mr. Pier fully understands about that. But nonetheless, he is aware by pleading guilty today he will be getting a downward departure of two levels which will be instrumental in helping him.

With that, Your Honor, the defendant is present in the courtroom with counsel and the United States is ready to proceed.

THE COURT: Very well. Thank you, Mr. Pico.

Mr. Pier, please come forward with Mr. Horn.

Mr. Pier, of course your trial in this

> case on the indictment of the grand jury
> against you on five different counts is
> scheduled to commence in five minutes, but I
> understand that you have now signed a plea
> agreement.  I have the original before me and
> it apparently bears your signature.
>       May I ask you, you heard Mr. Pico recite
> the details of this plea agreement in great
> detail here.  Is that your understanding of
> the plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:      And I will ask our clerk, Mrs.
> Lawson, to show you the plea agreement that I
> have here and the question I've got to ask you
> is whether or not that's your signature?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:      And did you and Mr. Horn have
> the opportunity to review the plea agreement
> in detail before you signed it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT:      So that you understood it?
>
> THE DEFENDANT: Yes, Your Honor.

(Change of Plea Tr. at 4-7 (emphasis added)).

     This exchange reveals that Mr. Pier was advised at his change

of plea hearing that the 41-51 month range was an estimate only and

that it was not binding on the Court.  Mr. Pier ultimately received

a 71 month sentence.  Contrary to the government's recommendation

of a two offense level reduction under § 3E1.1 of the sentencing

25

Case 2:05-cv-00097-CAB   Document 10   Filed 02/15/06   Page 26 of 37

guidelines for accepting responsibility, he received a three level reduction – more than he bargained for in his plea agreement. Had he chosen a trial, the range that would have applied would have been 77-96 months, potentially two years longer than he received. Mr. Pier never claims that he would have chosen a trial over his guilty plea if he had known that the Court might depart upward from the projected sentence. In fact, the record reveals that he was aware and understood that the estimated sentence was only an estimate and that the Court was not bound by it. In short, Mr. Pier has failed to demonstrate that he was in any way prejudiced by the alleged error. Therefore, this claim, too, must be denied.

### 4.    Allegation that Mr. Pier did not understand the "breadth of charges" against him.

Mr. Pier next claims that he did not understand the breadth of the charges against him before pleading guilty and therefore his guilty plea was involuntary. Again on this issue, he has not provided the Court with any reason as to why this issue could not have been raised on direct appeal. Therefore, he has not established the requisite cause to successfully attack his sentence under 28 U.S.C. § 2255. And, even assuming that he could not have raised the issue on direct appeal, at his change of plea hearing he provided the Court with a sufficient factual basis to support his

26

guilty plea.  The Tenth Circuit has held that sworn assertions in a change of plea hearing are "a formidable barrier in any subsequent collateral proceedings."  Lasiter, 89 F.3d at 702. "Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal as are contentions that in the face of the record are wholly incredible." Id.  Therefore, this claim is denied.

### 5.   Allegation that Mr. Pier made a "coerced confession."

Mr. Pier next claims that his conviction was obtained through a "coerced confession."  Mr. Pier provides very little information regarding this claim.  However, the question of whether he made a confession that was coerced prior to his guilty plea could not have been raised on direct appeal and cannot be raised here.  United States v. Salazar, 323 F.3d, 852, 856 (10th Cir. 2003) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.") (citations omitted).  Therefore, this claim is denied.

27

## 6. Allegation that the sentence was "unreasonable" in light of <u>Blakely</u> and <u>Booker</u>.

Mr. Pier next claims that the Court's decision to assess the sentencing enhancement was "unreasonable" in light of <u>Blakely</u>, 124 S. Ct. 2531 and <u>Booker</u>, 125 S. Ct. 738. Before reaching this argument, the Court must determine whether or not <u>Blakely</u>, and by extension <u>Booker</u>, are applicable in Mr. Pier's case.

On June 24, 2004, the U.S. Supreme Court reviewed the Washington State Sentencing Guidelines, which were codified in state statutes, as applied to Ralph Howard Blakely. The Supreme Court held that a defendant has a constitutional right to have a jury determine all facts legally essential to his or her case. <u>Blakely</u>, 124 S.Ct. at 2537-38. Any fact that increases the penalty for a crime beyond the statutory maximum sentence must be submitted to a jury and proven beyond a reasonable doubt. <u>Id</u>. at 2356. A defendant's statutory rights are violated when a judge imposes a greater sentence than the maximum that could be imposed without the challenged factual finding. <u>Id</u>. at 2537. The Supreme Court determined that, for sentencing purposes, the statutory maximum is the maximum sentence a judge could impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. <u>Id</u>. (discussing <u>Apprendi v. New Jersey</u>, 530 U.S. 466

28

(2000) and <u>Ring v. Arizona</u>, 122 S.Ct. 2428 (2002)).

<u>Blakely</u> was an extension of <u>Apprendi v. New Jersey</u>, which held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 490. <u>Blakely</u> made clear that any circumstance, evidence, or finding that increases a defendant's sentence which is neither admitted by the defendant nor found by the jury beyond a reasonable doubt may not be applied to increase a defendant's sentence.

In <u>Booker</u>, the United States Supreme Court extended the holding in <u>Blakely</u> to the United States Sentencing Guidelines ("Guidelines") stating:

> As <u>Blakely</u>'s dissenting opinions recognized, there is no constitutionally significant distinction between the Guidelines and the Washington procedure at issue in that case. This conclusion rests on the premise, common to both systems, that the relevant sentencing rules are mandatory and impose binding requirements on all sentencing judges. Were the Guidelines merely advisory – recommending, but not requiring, the selection of particular sentences in response to differing sets of facts – their use would not implicate the Sixth Amendment.

<u>Booker</u>, 125 S.Ct. at 742. Thus, as previously applied, the Guidelines may violate the Sixth Amendment. The remedy is to

29

remove the requirement that district court judges strictly adhere to the requirements imposed by the Guidelines. Id. at 767-68. Rather than reject the Guidelines completely, the Supreme Court determined that the Guidelines shall be advisory rather than mandatory. Id. The question now is whether the Blakely and Booker decisions apply to previously issued sentences, or whether the decisions are restricted to future application. In Booker, the Supreme Court clearly stated its intent to apply the holding to all cases on direct review: "As these dispositions indicate, we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretations of the Sentencing Act – to all cases on direct review." Id. at 768. The Supreme Court remained silent as to Booker's applicability on collateral review.

The Tenth Circuit recently provided guidance on the applicability of Blakely and Booker on collateral review. In United States v. Price, 400 F.3d 844 (10th Cir. 2005), the court held that Blakely "does not apply retroactively to convictions that were already final at the time the [Supreme] Court decided Blakely, June 24, 2004." Price, 400 F.3d at 849. Further, in June of 2005, the Tenth Circuit held that "like Blakely, Booker does not apply retroactively on collateral review. . . ." The Tenth Circuit

30

determined that while both cases announced new rules for constitutional purposes, neither rule announced a watershed rule of criminal procedure nor did they add or remove any conduct from the realm of criminal offenses. As such, these "new rule[s] of criminal procedure 'will not be applicable to those cases which have become final before the new rules [were] announced.'" United States v. Bellamy, 411 F.3d 1182, 1186 (10th Cir. 2005) (quoting Teague v. Lane, 489 U.S. 288, 310 (1989)).

The United States Supreme Court issued its decision in Blakely on June 24, 2004. The decision in Booker was issued on January 15, 2005. Mr. Pier's case became final on January 22, 2004, upon the lapsing of the time period for filing a notice of appeal to the Tenth Circuit. FED. R. APP. P. 4(b)(1). His case, therefore, was final before the new rules in Blakely and Booker were announced. As such, he is unable to benefit from the holding in either case.

### 7. Allegation that the sentence was unlawful because it is consecutive rather than concurrent with Mr. Pier's undischarged state prison sentences.

Mr. Pier next claims his sentence was unlawful because the court ordered it to run consecutively, and not concurrently with his state prison sentences. Mr. Pier has not provided the Court

31

with any reason as to why this issue could not have been raised on direct appeal. Therefore, he has not established the requisite cause to successfully attack his sentence under 28 U.S.C. § 2255 and it is procedurally barred.

Further, Mr. Pier provides no information or argument as to why it is he thinks a consecutive sentence was unlawful in this instance. It is undisputed that Mr. Pier's undischarged state prison sentence was the result of probation violations. The Sentencing Commission recommends that where a defendant's undischarged, existing sentence is based upon the revocation of probation, the new sentence should ordinarily be imposed to run consecutively to the undischarged sentence. U.S.S.G. § 7B1.3 cmt. n.4. Here, the Court had discretion to determine whether a consecutive or concurrent sentence would be applied. Its decision to accept the consecutive sentencing recommendation by the Sentencing Commission can hardly be characterized as unlawful or an abuse of discretion. Therefore, this claim is denied.

> **8. Allegation that Mr. Pier was denied the right to call witnesses to testify on his behalf at his sentencing hearing.**

Mr. Pier next claims his sentence was unlawful because he was denied the right to call witnesses to testify on his behalf at

32

sentencing.  Again, Mr. Pier has not provided the Court with any reason as to why this issue could not have been raised on direct appeal.  Therefore, he has not established the requisite cause to successfully attack his sentence under 28 U.S.C. § 2255 and it is procedurally barred.

Moreover, Mr. Pier has not identified what witnesses he would have called or what testimony they would have given which would have had the effect of lessening his sentence.  In addition, the Court invited Mr. Pier to testify at his sentencing hearing and/or to put on additional evidence and he declined, through his attorney, advising the Court that he had no testimony.  (Sentencing Tr. at 29.)  Therefore, this claim is not meritorious and is denied.

### 9.  Allegation that there was insufficient factual basis for his guilty plea, in violation of Rule 11(f) of the Federal Rules of Criminal Procedure.

Mr. Pier next claims his sentence was unlawful because his guilty plea was not based upon a sufficient factual basis as required by Rule 11(f) of the Federal Rules of Criminal Procedure. Again, Mr. Pier has not provided the Court with any reason as to why this issue could not have been raised on direct appeal. Therefore, he has not established the requisite cause to successfully attack his sentence under 28 U.S.C. § 2255 and it is

33

procedurally barred.

This claim is related to several other arguments raised by Mr. Pier and addressed above. The Court will not restate its prior analyses with respect to the sufficiency of evidence to support Mr. Pier's guilty plea. However, for the reasons provided in Part I.B.1., pp. 14-15, and Part I.C.1., pp. 21-22, supra, this claim is denied.

### 10.  Allegation that Mr. Pier was denied due process by the Court's failure to appoint counsel on appeal.

Mr. Pier next claims he was denied due process because the Court failed to appoint him counsel on appeal. As Mr. Pier points out in his § 2255 motion, his attorney advised him not to appeal and he followed that advice. Given that he chose, on the advice of counsel, not to appeal, there was no occasion given to the Court that would have justified the appointment of appellate counsel. As a result, this claim is denied.

### 11.  Allegation that the enhancement of his sentence under § 2K2.1(b)(5) was improper because it was based on charges that were ultimately dismissed.

Mr. Pier next claims that the enhancement of his sentence under § 2K2.1(b)(5) was improper because it was based on charges that were ultimately dismissed. Again, this claim is procedurally barred because Mr. Pier has failed to establish cause for failing

34

to raise it on direct appeal.  Further, § 2K2.1(b)(5) applies where there are facts to support its application, regardless of whether the defendant was either charged or convicted of the underlying charge.    United States v. O'Flanagan, 339 F.3d 1229, 1231-1235 (10th Cir. 2003).    Therefore, even upon its merits, Mr. Pier's argument that his sentence was improper because the charges underlying the § 2K2.1(b)(5) enhancement were dismissed fails. That claim is therefore denied.

### 12.  Allegation that the court failed to advise him that his sentence was appealable.

Mr. Pier next claims that the Court erred because it failed to advise him that his sentence was appealable.    In fact, the sentencing court did advise Mr. Pier that his sentence was appealable, as required by Rule 32(j).  The Court stated, "You are advised that there is no waiver of the right of appeal of this sentence." (Sent. Tr. at 47.)  Further, Mr. Pier's own statements indicate that he was aware of his appeal right.  Indeed, one of the reasons he claimed his counsel was ineffective was based upon counsel's advice not to appeal his sentence.  If he received advice on whether to appeal, he must have been aware of his right to appeal.  In short, Mr. Pier was advised of his right to appeal and made the decision not to appeal.    This claim is therefore

35

dismissed.

## II.   Defendant's Motion for Reduction of Sentence

Having addressed Mr. Pier's § 2255 Motion, the Court will now turns its attention to Mr. Pier's Motion for Reduction of Sentence. Mr. Pier filed his motion under 18 U.S.C. § 3582(c) and Rule 35(b), seeking to have his sentence reduced in light of the United States Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005).

However, section 3582(c) is available only in situations where, subsequent to a defendant's sentencing, the Sentencing Commission has lowered the guideline range used to calculate the defendant's sentence and has made that change retroactive.   18 U.S.C. § 3582(c); United States v. Clayton, 92 Fed. Appx. 703, 705-06, 2004 WL 389465 (10th Cir. March 3, 2004)(unpublished decision). That section does not provide a mechanism to challenge the constitutionality of a previously imposed sentence. United States v. Torres-Aquino, 334 F.3d 939, 941 (10th Cir. 2003); United States v. McBride, 283 F.3d 612, 615-16 (3d Cir. 2002). And, that section does not provide a vehicle for claims based on Apprendi v. New Jersey, 530 U.S. 466 (2000), or its progeny, including Booker. Clayton, 92 Fed. Appx. at 705-06;   McBride, 283 F.3d at 615-16;

36

United States v. Joseph, 130 Fed.,Appx. 357, 360, 2005 WL 1038766 at *3 (11th Cir. May 4, 2005)(unpublished decision); United States v. Privette, 129 Fed. Appx. 897, 899, 2005 WL 995951 at *1 (5th Cir. 2005)(unpublished decision); United States v. Mitchell, 122 Fed. Appx. 539, 541, 2005 WL 387974 at *1 (2d Cir. 2005)(unpublished decision).

Therefore, Mr. Pier's motion is denied.

For the foregoing reasons, Mr. Pier's Motion to Vacate, Set Aside, Review and Correct Sentence Previously Entered Pursuant to 28 U.S.C. § 2255 is **DENIED**; and Mr. Pier's Motion for Reduction of Sentence is **DENIED**.

Dated this ___14th___ day of February, 2006.

UNITED STATES DISTRICT JUDGE

37